IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CONNIE SALAZAR,

      Plaintiff,

v.     No. CIV 97-0144 JC/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

### PROPOSED FINDINGS

1.     Plaintiff (Salazar) invokes this Court's jurisdiction under **42 U.S.C. §405(g)**, seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner). The Commissioner determined Salazar is not eligible for supplemental security income. Salazar moves this Court for an order reversing or remanding this matter to the Commissioner for a rehearing. This Court reviews the Commissioner's decision to determine whether his findings are supported by substantial evidence and whether he applied correct legal standards in making his decision. *Washington v. Shalala,* **37 F.3d 1347, 1349 (10th Cir. 1994)**.

**Administrative History**

      2.      Salazar's application for supplemental security income was denied at the administrative level both initially and on reconsideration. Salazar requested and received *de novo* review before an administrative law judge (ALJ). The ALJ held a hearing on June 29, 1995, at which Salazar and her attorney appeared. On January 23, 1996, the ALJ found that Salazar was not disabled within the meaning of the Social Security Act. On January 8, 1997, the Appeals Council denied Salazar's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.

**Statement of Facts**

      3.      Salazar filed her application for supplemental security income on November 8, 1994, alleging disability since April 1, 1992, due to fractures and neuroma of the left leg. Tr. 21. She was 35 years old on the date of the ALJ's decision, had a ninth grade education, and had worked as a housekeeper. Tr. 21; 62.

**The Decision of the Commissioner**

      4.      The ALJ determined that Salazar had not engaged in substantial gainful activity at any time relevant to the decision. Tr. 21. At step two, the ALJ found Salazar had severe and non-severe impairments associated with status-post left femur fracture; status-post neuroma removal, left patella; status-post left breast mass; and dysthymia. Tr. 22. At step three, the ALJ determined Salazar's impairments, singly or in combination did not meet or equal the listings. *Id.* The ALJ found Salazar's subjective complaints and functional limitations including pain were not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility. Tr. 25. The ALJ determined Salazar had the residual functional capacity to perform the full range of light work

without any non-exertional limitations. Tr. 25. At step four, the ALJ found Salazar was not able to perform her past relevant work as a housekeeper. *Id*. At step five, relying on the grids, the ALJ determined Salazar was not disabled within the meaning of the Social Security Act. Tr. 26.

**Discussion**

5.  The function of this Court on review is not to try the plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence and whether she applied correct legal standards. ***Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992)**. The district court should not blindly affirm the Commissioner's decision, but must instead scrutinize the entire record to determine if the decision is supported by substantial evidence and if the law was correctly applied. ***Hogan v. Schweiker,* 532 F.Supp. 639, 642 (D. Colo. 1982)**.

6.  Substantial evidence is more than a mere scintilla. ***Richardson v. Perales,* 402 U.S. 389, 401 (1971)**. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. ***Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993)**. Failure to apply correct legal standards also constitutes grounds for reversal. *Id.*

7.  The Social Security Administration has promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. **20 C.F.R. §§ 404.1520 and 416.920 (1994)**. At the first three levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under **20 C.F.R. Part 404, Subpt. P, App. 1 (1994)**.

8.      If the plaintiff cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past. **20 C.F.R. §§ 404.1520 and 416.920 (1994)**. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.* If a determination of disability is made at any step, further inquiry is not required. *Id.*

9.      Salazar argues the ALJ erred in concluding she is not disabled based upon the grids and with respect to the legal analysis of her credibility; erred in failing to obtain the testimony of a vocational expert; and erred in failing to properly consider the combined effects of her impairments.

10.     First, Salazar argues the ALJ erred in concluding she is not disabled based upon the grids and with respect to the legal analysis of her credibility. At step five, the burden of proof shifts to the Commissioner to show that the claimant retains the residual functional capacity to do work which exists in the national economy. ***Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)**. In certain cases, at the fifth step, the ALJ may rely solely on the grids.

11.     The grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of occupational publications and studies. **20 C.F.R. §404.1566(d) (1994)**. The grids aid the Commissioner in determining what specific jobs exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. **20 C.F.R. §§404.1545, 404.1563-.1565 (1994)**. These findings of fact are plugged into the grids to produce a factual conclusion of disability. **20 C.F.R. §404.1569 (1994)**.

12.     While it is true the grids may not be applied conclusively unless the plaintiff's

characteristics precisely match their criteria, the mere presence of a non-exertional impairment does not necessarily preclude reliance on the grids. ***Ray v. Bowen*, 865 F.2d 222, 225-26 (10th Cir. 1989)**. Use of the grids is foreclosed only to the extent that non-exertional impairments further limit the range of jobs available to the claimant. ***Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988)**. In this case, the ALJ applied the grids only after she determined Salazar retained the ability to perform the full range of light work with no non-exertional limitations. Tr. 24.

13. The ALJ found Salazar could perform the full range of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting of objects weighing 10 pounds, as well as a good deal of walking and standing, or sitting most of the time with some pushing and pulling of arm or leg controls. **20 C.F.R. § 404.1567(b) (1994)**. The record clearly established Salazar was able to perform at this level.

14. Dr. Swajian, an orthopedic specialist, noted on February 10, 1992 there did not appear to be any reason for Salazar's complaints of her hip giving out. Tr. 92. A CT scan of the lumbar spine performed on March 23, 1993 was normal. Tr. 81. Dr. Swajian also noted Salazar was non-compliant with treatment. Tr. 83; 89. Dr. Levitt, Salazar's family physician, referred her to Dr. Sloan for assessment of complaints of left hip pain. Tr. 78. Dr. Sloan's stated the etiology of the left hip pain was "elusive," there was "hypersensitivity" of the left knee and Salazar had asked him to write a letter to Social Security stating she was disabled. Tr. 77. He refused. *Id.* Records from Dr. Levitt indicate routine care with occasional complaints of pain. Tr. 97-108. In sum, substantial evidence of record supports the ALJ's finding that Salazar is able to perform the full range of light work and the ALJ applied correct legal standards.

15. The record also establishes Salazar was hospitalized at a psychiatric hospital from

April 26, 1993 to April 30, 1993, after attempting suicide by overdosing on pain medication. Tr. 193-216. She was diagnosed with dysthymia on admission. Tr. 193. There are no other indications of psychological treatment in the record. The ALJ has the authority to resolve conflicts in the evidence. ***Casias v. Secretary of Health and Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).** The mere fact Salazar suffered from mental problems does not automatically establish these problems were disabling. ***Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).** The ALJ analyzed the record and determined Salazar's psychological impairment was not severe and did not restrict her ability to perform the full range of light work. A review of the record and the decision of the ALJ establishes she properly considered all the evidence regarding Salazar's mental condition and substantial evidence of record supports her findings. Therefore, the ALJ properly applied the grids after she determined Salazar retained the ability to perform the full range of light work and did not have any non-exertional limitations.

16.     Salazar next contends the ALJ's credibility determination is not supported by substantial evidence. The ALJ found significant weight could not be given to Salazar's complaints of pain and other problems since they are largely unsupported by clinical findings, medical studies, and assessments of physicians. Tr. 25. Credibility determinations are peculiarly within the province of the ALJ and will not be disturbed when supported by substantial evidence. ***Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995);** *Hamilton*, **961 F.2d at 1499-1500;** *Gossett v. Bowen*, **862 F.2d at 807**. After reviewing the entire record, the Court is satisfied the ALJ's credibility determination is supported by substantial evidence and she applied correct legal standards.

17.     Salazar contends the ALJ erred in failing to obtain the testimony of a vocational

6

expert. In this case the ALJ relied on the grids at step five. The grids may be used when the ALJ finds, based on substantial evidence, the non-exertional impairment does not affect residual functional capacity. *Glass v. Shalala*, **43 F.3d 1392, 1396 (10th Cir. 1994).** The Court has already determined substantial evidence of record supported the ALJ's finding that Salazar retained the residual functional capacity for the full range of light work. Consequently, it was not necessary to obtain the testimony of a vocational expert.

18. Salazar claims the ALJ erred in failing to properly consider the combined effects of her impairments. The Commissioner must consider the combined effects of impairments which may not be severe individually, but which in combination may constitute a severe medical disability. *Hargis v. Sullivan*, **945 F.2d 1482, 1491 (10th Cir. 1991).** The ALJ analyzed Salazar's impairments under three listings to determine whether her condition met or equaled any of them. Tr. 22. The ALJ found Salazar's condition did not meet the listings. As required, the ALJ considered the combined effects of Salazar's impairments in making this determination. *Id.* Thus, the ALJ applied correct legal standards and substantial evidence supports her decision at step three.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand administrative agency decision should be denied and this case should be dismissed.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**